Good morning, I'm Keith Dollaheit from Tyler, Texas. With me today are Deborah Pullum, the City Attorney for the City of Tyler, and Gary Swindle, the Chief of Police for the City of Tyler. I'd like to focus my argument this morning on three points. The first is that the District Court misconstrued the legal effect of the deposition testimony of Juan Fuentes as creating a disputed issue of fact. My second point is that Juan Fuentes cannot manufacture a fact issue by contradicting his prior statement given in his police interview made under penalty of law. And the third is that the District Court failed to apply the reasonable jury standard under which there is no genuine issue for trial. So to focus on my first issue about . . . Let me ask you a threshold, which you probably are going to cover, so I'm not trying to preempt what you're about to say, but just on the whole fact matter. You know, we get a lot of scenarios where there are a variety of statements, you know, people giving three statements, one statement, affidavit, deposition, yada, yada, and laying all four of them up against each other. You know, there tends to be not a straight line, there's some deviation, et cetera. So you would acknowledge, I'm sure, that in the ordinary course of interviewing people, wherever they are, there's some deviation, shall we say, you know, some about more material things than others, but it's not just in a perfect line. So is it the proposition that, for purposes of our inquiry, that because there isn't this straight line trajectory in Mr. Fuentes' testimony that, you know, makes a qualitative difference to our inquiry, or are you saying something else? So it may be subsumed to what you're going to say, but I'm just kind of leading you into . . . I want to be sure I'm clear on what the argument is about the fact. Okay, and that's my second point, and I'll . . . But don't get out of order. Okay. Just, you know, in the course of it, just hit it when you get to it. I will. Thank you. The first point is very simple, and that is, if you look at the deposition testimony of Juan Fuentes, the question is, what does it mean? And the legal effect of evidence is a legal question. It's not something that the jury would have to find. We have the testimony in black and white. What does it mean? Juan Fuentes testified several times that he did not see Victor Fuentes holding a gun. Quote, I didn't see him with a firearm with him at all, close quote. Quote, I didn't see him carrying anything in his hands. That is not evidence that Victor Fuentes did not have a gun in his hands. That is evidence that his father, Juan, did not see him with a gun, and that's the distinction that the court made in Royal v. Spragans, which was decided last year, in which it was a qualified immunity case, shooting case. Three officers submitted affidavits stating that the individual began to point his gun at the officer when the officer fired. A witness submitted a declaration that said he never saw the individual point his gun at anyone, and the panel of this court held that that testimony, that he did not see him point the gun, was no evidence to controvert the evidence of the officers that he was pointing his gun. Why isn't that case inapposite? Because in that case the witness was not actually looking at the person pointing the gun, whereas here Juan Fuentes' testimony reflects that he was looking at him at the time of the shooting, saw his hands, and that he did not see him holding a gun. I think that there is a distinction factually between the two statements, but what I understand the court had been going on was the fact that testimony that someone doesn't see something doesn't prove that it didn't happen. It just proves that that person didn't see it. But if the person is looking and it was there, they would have seen it because they also add it's in their hand. I mean, I'm seeing their hands. So it's not that they're distracted or they don't have a good vantage point. It's I don't see it because it's not there. I see their hands and they don't have a gun. Why isn't that confident testimony that they don't have a gun? There's an issue about whether or not he could actually see because of the situation he was behind the door. I don't know if it's clear in the brief, but essentially the back door swings open into the bedroom where Victor Fuentes was shot. The father was not in the bedroom with him when he was shot. The father was in an adjoining closet storage room that has a cased opening, and it's undisputed that when this door opens, it covers virtually all of this cased opening. And so Juan Fuentes was on the other side of the door from the officer. But I appreciate your question, and I think it doesn't make any difference because you look at what the actual testimony is, and he testified, I did not see him holding a gun. I did not see him with anything in his hands. Doesn't all of this go to genuineness? Well, I think it does ultimately rise to that level, to a degree. And if it does, it's not here. I mean, we don't get into it, do we? Well, that's my third point, if I may forestall that for just a moment, on the reasonable jury standard  The second point is that it's basically been called the sham affidavit rule. In some places, the sham testimony rule. And Chief Judge Stewart, you were asking me, you know, does it have to perfectly align? And it is a qualitative question. It can vary. But what we have here is a situation where three and a half hours after the shooting took place, the witness, Juan Fuentes, goes to the police station. He's there for a recorded interview that's videotaped. He has an attorney present with him. There is an interpreter provided by the police department there to interpret questions and answers. A transcription is made of that, and he's under penalty of law to tell the truth. He's not sworn, but there's a section in the penal code, section 37.08, which makes it a criminal offense to make a material misstatement of fact to a police officer during an investigation. The perjury statute in Texas is also in Chapter 37 of the penal code. So it's the functional equivalent of perjury. So it's not just a statement to an officer. It's actually a recorded formal statement that was given. And he said in that statement seven times, I do not know if my son, Victor, was holding a gun. So our position is you can't, under penalty of law in your recorded interview, make the statement, I don't know, and then later contradict that if the testimony is construed as being he was saying he was not holding a gun. And if the court construes it that way, then you can't contradict that to create a fact issue. And other circuits, I think it's the 7th, 8th, and 9th, have applied the sham testimony rule to the situation where the affidavit or testimony in the case contradicts some prior statement that wasn't a deposition in that case. It was either a testimony in another case, it was a discovery response, or even documents filed with the government that were under penalty of law that had to be true. I mean, how is that different? I'm not saying where I am in terms of the argument. I'm just trying to trace it through just the elements of people testifying, period. I mean, why doesn't that go to sort of the nature of impeachment? I mean, somebody gives a deposition right after the car wreck. Somebody gives a deposition within a year of trial. Then they get on the stand. I mean, you know, we've got, well, on date A, didn't you say, you know, you weren't sure, or da-da-da-da. Then later, so now the person's on the stand saying, oh, absolutely, light was red. I mean, you're armed to the teeth with impeachment of the statement, ladies and gentlemen of the jury. First he said it wasn't, then he said . . . I mean, I'm trying to not oversimplify, but, you know, why isn't this just going to the nature of, you know, testimony, where it's inconsistent. You impeach the person. That means the jury doesn't get it. Now, I understand the nature of the qualified immunity. You're trying to . . . I mean, the nature of the defense is not to get into that arena, but just kind of parsing it here and saying he's got a lawyer. You know, he shows up. You know, he's under oath. You know, he gives it in sham, but it's still testimony, you know, and often it's how the questions are asked. I mean, I haven't looked at that closely. I mean, the answer is the way that the question is asked, how that's framed, how it's laid. I mean, you're not getting us pretty deeply immersed into the, you know, sort of the fact-finding, who do you believe process that all of us are experienced with. Which is why it's a genuineness issue. Well, I think it's two things. One, under the sham affidavit rule, that applies in all contexts, of course, whether it's qualified immunity or something else. And if you look at the actual transcript of his interview, the questions are very direct to him. Well, I'm not trying to get your net. No, I'm done. Go ahead. I apologize. No, no, I'm done. What cases apply sham affidavit rule in the Fifth Circuit to a circumstance where the person has a lack of knowledge, says, I don't know, and then says yes or no, rather than says no and then says yes? What cases do you have to show that that's even a sham affidavit situation in the Fifth Circuit? I did not find a specific case that said that specific thing. I think it's when you have a change in testimony. The difference being saying in the first instance, I do not know, and saying it repeatedly. He said it seven times, and he was going to look at the transcript of his interview. He was asked very specifically, could he have had anything in his hands? Did you see anything in his hands? Was it possible that someone could perceive he had something in his hands? I don't know. I don't know. I don't know. What cases do you have from other jurisdictions where I don't know is considered the possible, the use of the sham affidavit between I don't know and then a definitive answer? I didn't find a specific case that described that situation. So you would like us to use this theory, but there's not a case that has used this theory in this type of situation before? Well, I think there are lots of cases that apply the sham affidavit rule. Between yes and no, but not between yes and I don't know. Well, I think there's a difference between I don't know and I do know. That's the distinction. That's what I'm asking if there's any cases that make that distinction. I didn't find any cases specific to that point. Let me address the other reason why I don't think we're in just weighing the evidence, and that is under the reasonable jury standard as described in Anderson v. Liberty Lobby, there's a preliminary question that the court has to ask, not is there just any evidence, but does it rise to the level that a reasonable jury could find in favor of that person based on that evidence? So there's a threshold question that the court has to ask in looking at the summary judgment record, and that a genuine issue of material fact exists only if a reasonable jury could find in favor of the non-movement based on that evidence. So that's the reasonable jury standard. It has to be a genuine issue. And in Scott v. Harris, the court said that the evidence is viewed most favorably to the non-movement only if there is a genuine issue. And Scott v. Harris, of course, involved the videotape, which was very clear evidence. But if you look at the actual language of the opinion in Scott v. Harris, it says that where the record taken as a whole could not lead a rational trial or fact to find for the non-moving party, there is no genuine issue of trial. It doesn't say where the video would make you believe that the one version is so contrary to the video. It says where the record taken as a whole. So you think Scott v. Harris applies outside of the video context? I do because – Has anyone ever applied Scott v. Harris outside the video context? Well, yeah, because it basically follows the same reasonable jury standard that the court set forth in Anderson v. Liberty Lobby. I'm asking for what – I understand that this is really thin, and this is thin. But I don't understand – and because of the autopsy and all of the other things in the record that support your client's version of the facts. But what case says that it doesn't meet Anderson v. Liberty Lobby or applies Scott to say that there's no – outside the context of a videotape? What case do you have that would, on facts like these, hold what you wish us to hold? Recently, this court – and I provided a site letter to it. It was an audio tape. It wasn't a videotape. It was a police shooting case, and it's the Rice case. But it's a tape again. It is an audio tape. It's true. And here, of course, we have – basically, you've got the contradictions that Juan Fuentes gave in his – between his interview and his deposition testimony, and those contradictions are set out in the brief, one of which was, you know, did you have any guns at the house? And in his interview, he said no. Then in his deposition, he admitted yes. These are significant contradictions that he made between his two statements. On the questions of were there guns at the house, were there bullets at the house. Madam Clerk, give counsel two additional minutes. We've asked you a lot of questions and don't want to cut you off, so we'll give you two minutes if you need them. On the other side, we'll give you equal standing. So you've got two minutes, so go ahead. Thank you, Judge. The autopsy is important, Judge Elrod, I believe, because it is objective evidence. Juan Fuentes testified that he believed his son was walking away from the officer at the time of the shooting, and I think you have scientific evidence from the wound tracks, the wound entry points, that he was shot twice in the front. The third time was in the back to the side of the neck, and the only way he could have possibly, for that bullet to have ended up in his lower left lung, was for him to be falling forward. So I think you have objective scientific evidence that Juan Fuentes' testimony contradicts, and for that reason, I don't think it creates a genuine issue. Thank you for the additional time, Judge. All right. Thank you, sir. Mr. Homo. Mr. Homo. Thank you, Your Honor, for the pleas of court. I am Bill Homo. I represent Yaneth Fuentes and her children, Hector, Victor, and Kimberly, and Juan and Angelica Fuentes, the parents of the deceased, Victor Fuentes. Our position is pretty simple, that the appellant seeks to have this court basically turn the Seventh Amendment on its head and have a judge and not a jury decide who is telling the truth in this case. So simply stated, we believe the court does not have jurisdiction to hear this matter because Officer Riggle is asking the court to resolve a factual dispute regarding a material fact in the case. Secondarily, we believe under Tolan v. Cotton that summary judgment would not be proper under this record. Is there anything else in this record that is consistent with the father's testimony that Victor was not holding a firearm and was shot in the back? Is there anything else other than this testimony that supports that? Well, the only no there isn't, and Juan Fuentes claims, and he certainly had the ability based on the record and what Mr. Dalhite told the court, his physical position in the home would have allowed him to visibly or visually see the occurrence. So he was in a position to be able to see, and he has certainly testified as to what he saw. Is Juan's testimony, including vacillation, sufficient evidence upon which a reasonable jury could rely, and what case do you have for that proposition? Well, Your Honor, let me back up a little bit because his statement to the police also includes statements that he did not see Victor with a gun, and bearing in mind that the circumstances was that his son had been shot and killed by the police in his home that very night, and he was not given the circumstance that Officer Riggle was given to consult with counsel and have three days to put his written statement together, but be that as it may, the cases that talk about whether there's a material fact issue, which in turn leads back into the jurisdiction argument, even Toland v. Cotton, there were four fact issues that the Supreme Court found that required the denial of the summary judgment. I mean, we're talking about whether the area was dimly lit, whether the mother was aggressive, whether Mr. Toland was on his knees or on his feet, or whether he was being aggressive towards a police officer. So those are the types of factual issues that not only the Supreme Court but this court have held are material, and they preclude jurisdiction because it resolves resolution of a fact issue. And this court's function is to look at a particular set of facts and determine whether a constitutional violation took place, not determine whether a particular set of facts exist. That's the essence of the jurisdiction cases in this court, is this court is not to decide whether or not Victor Fuentes was actually holding a gun at the time of the shooting. That's not this court's function. That's a function of the jury, and that's why the cases say that the appellate court doesn't have jurisdiction because that determination is not a final appealable order. It goes back to the fundamental issue of the appealability of the qualified immunity determination. And if you go back to Johnson v. Jones, which is a Supreme Court case, which basically I was quoting a minute ago, the court talked about whether or not the appellate court had the ability to resolve those factual questions at the appellate level because it basically merges into whether or not there's a case or not, whether or not the plaintiff actually has a case or not, and whether or not there was a constitutional violation. So that's why we believe that the court just absolutely doesn't have jurisdiction. And there are other cases out of this court that have held that very issue, other shooting cases. The Lytle v. Bexar County case, which we've cited in the brief, was where the police officer shot and killed a passenger of a car he had been chasing that pulled over. And really the sole issue that this court held which negated jurisdiction was the position of the vehicle and whether or not it backed towards the police officer or not. And on that very narrow issue of fact, this court held that there was no jurisdiction. There can be no more important fact in this particular case that we're on here today than whether or not Victor Fuentes was holding a gun at the time of the shooting. I can digress a bit at this point towards why Officer Riggle was even there in the first place. We briefed the issue on the unlawful entry into the residence. And we don't believe and I don't believe I would be doing my job if I didn't raise the issue that he shouldn't have been there to begin with based upon the factors that we've talked about in the brief. But even with the circumstance of Officer Riggle being in the residence, the crucial issue in the whole case is whether or not Victor Fuentes pointed a gun at him. Do you believe the testimony of Juan Fuentes is enough? I do. Under Anderson v. Liberty Lobby? Well, here's the argument that I believe that counsel is making. And I believe that the Supreme Court in Tolan v. Cotton has really disposed of the notion that this reasonable jury standard is a thing, if you will, because basically what the appellant is asking this court to do is to make a value judgment as to whether or not Juan Fuentes is actually telling the truth. And I don't think this court has jurisdiction to do that. And, you know, not to launch off into something irrelevant, but this reasonable jury argument is just taking the language from Liberty Lobby and trying to create a judge's deciding facts rather than jury's deciding facts. And I think Tolan v. Cotton pretty well tells us that the Supreme Court doesn't believe that's the way that this should go. With regard to your claim for denial of medical care, is that abandoned? Yes, Your Honor. Thank you. Other cases in the Fifth Circuit that have found no jurisdiction in police shooting cases, the Bazan v. Hidalgo County case where the suspect got into an altercation with the DPS officer, ran into a field. And the only witness to the occurrence was the DPS officer as to what happened in the field and the facts that led up to the fatal shooting of the suspect. This court talked about whether the issue is genuine, if it's real and substantial, and it's not merely some ancillary issue to the court. Once again, the issue of whether Victor Fuentes was holding a gun is critical to the plaintiff's case. Now, one of the things that this court did discuss in the Bazan case was the issue of whether when the officer is the only witness to the occurrence and whether or not this court has the ability to judge the facts based upon only the testimony of the shooting officer. But what the court held in Bazan went back to Johnson v. Jones, and the issue is not whether or not a particular set of facts exist, but whether a constitutional violation actually occurred based upon an agreed set of facts. And this court found that there was controversy as to what happened in the field with regard to the officer's conduct that led up to the fatal shooting. One other case I would point the court's attention to with regard to the lack of jurisdiction issue is the Hale v. Townley case. That was the case out of Shreveport where Mr. Hale was subjected to arrest and harassment by the police officers after he had won a 1983 case against the police department, which led to his arrest and prosecution. He filed the 1983 case against the officers alleging excessive force in his arrest. This court found that there was no jurisdiction based upon the issue that the officers presented a much different factual version of the occurrences of the arrest than Mr. Hale. The key issue, I think, for this court is going back and looking at Judge Payne's order because he was very specific in what he found. The how are you here question is answered by the language in Judge Payne's order, and he found a material question of fact as to whether or not the decedent was holding a gun and pointing it at Officer Riggle at the time he was shot. He was very specific. There's a material fact. It's disputed, and therefore we believe there's no jurisdiction. There was one case where this court, White v. Balderrama, which I believe Judge Keene participated on that panel, where this court sent the case back to the trial court to tell or be specific about which facts were in controversy or which facts formed the basis for the denial of the summary judgment on the qualified officer. It was a qualified immunity issue. So we don't have that problem in the case now before the court because Judge Payne was very specific in his order. Our next argument before the court or point that I would like to address is the actual summary judgment propriety of summary judgment as a whole, and I don't really want to plow ground that I've already gone over. But under Tolan v. Cotton, I think the Supreme Court has spoken very clearly about summary judgments and this supposed reasonable jury standard. And if there are legitimate disputes about the facts in a case, the Supreme Court has said a jury's going to decide that, not a judge. And I think the language and the facts in Tolan v. Cotton were very instructive for this particular case because of the facts that the Supreme Court found in controversy in Tolan v. Cotton. It was very specific and said the judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether or not a genuine issue exists for trial, which that's exactly what Judge Payne did in this case. Regardless of the characterizations and the potential cross-examination of Juan Fuentes on his statement, the fact of the matter is he has testified, it's evidence, it's in the record, and it's in dispute, and that fact alone entitles these folks to a jury trial on that issue. If the court has any further questions, I'd be more than happy to address them. I think you said on the medical care, you've abandoned that on the unlawful entry. You kind of covered that. You haven't conceded, but just assuming the legitimacy of the officers there, your main points of focus on the no jurisdiction. So was there anything else about the unlawful entry? You haven't abandoned it. You rested on your brief on that one. Well, Your Honor, I think that the . . . I would like to maybe address the facts a little bit on that. Is that even before us? It's really not, and that's why I hesitated to . . . They didn't appeal that, did they? That's correct, Your Honor. That's correct. But I would like to speak to that. I'm not courting argument. I'm just feverishly just looking back through my notes, just trying to make sure, which I often am missing something, and just to make sure I had all my little tick marks off here. That's all. I knew it was in there, but not something you were arguing strenuously, but unlike the other issues. I mean, I got it. I mean, I understood what it is. So I'm not soliciting that you go through it, and the point raised by my colleague is well taken. All right. Well, if there are no other questions . . . All right. Thank you, sir. All right. Counsel, you have rebuttal. Thank you, Judge. The courts below did not address the unlawful entry issue. That was not a basis for the denial of summary judgment. They raised it in their brief. We responded. Stan v. Sims, I think, takes care of that issue. That's not before us. That's not one of your appeal points. Correct, and it wasn't a basis for the trial court's decision. Tolan v. Cotton did not involve any undisputed scientific evidence. That's a key distinction between that case and this case. It's the principle in the case. I mean, every case is going to be different on the fact. You know that. But I don't think Tolan v. Cotton changes the reasonable jury standard. It doesn't even address that. It simply says, based on that record, the court believed that there were disputed facts that required a reversal of the summary judgment. In our case, of course, we've got the autopsy, which is an undisputed scientific fact of the entry wounds, the entry tracks, excuse me, the wound tracks, and that is objective evidence that Juan Fuentes' testimony lies in the face of it. Are you, in essence, though, making a potent argument that even assuming his statement is what it is, that you've got the trump card in terms of not only a different version of what happened, but also the forensic evidence that would tip the scale, so therefore, King's X? I mean, aren't you really saying you win? I don't mean that, but I'm saying you're saying, A, his statements are what they are. You've made that. The officer says this, da-da-da-da, but I've got the forensic, King's X. No matter what the jury would believe, da-da-da-da, it can't, or the jury can't reasonably believe it because I've got the trump card here. So, I mean, isn't that sort of preempting the process as opposed to, yes, that may be the result later, but we aren't charged to . . . I think there has to be a genuine issue before the summary judgment can be denied. I think that's the key point here. And to have a genuine issue, you have to have evidence that a reasonable jury could find in favor of the non-movement. You made, obviously, good counsel on both sides. The briefing, same argument was made to the trial court. So, what did he miss? Did he miss the governing law? Did he focus on the wrong thing? In a word, what? I think the distinction is the trial court believed that the genuineness question and the reasonable jury standard is only applied when you have a video. And our position is, under Anderson, that's the threshold question. You have to have a genuine issue before summary judgment can be denied. And to get to that genuine issue, you don't in this case because you've got the objective autopsy, you've got DNA on the trigger of the gun, and that no reasonable jury could find in favor of Juan Fuentes in light of those facts. There's no dispute that the autopsy says what it says. They don't have any explanation for that. There's no dispute that Victor Fuentes' DNA was found on the trigger of the gun. They have no response to that. Juan Fuentes claims that the two guns were in the closet with him, including his two handguns, the .38 Special, that the two officers saw Victor holding, and that four minutes after the shooting when the ambulance got there, the paramedics saw it beneath Victor Fuentes. So there's no explanation of that. I just don't think that this evidence rises to the level that a reasonable jury could find in their favor, and therefore there is no genuine issue for trial. I think that's particularly important in the qualified immunity context and for the reasons that the case I'll say. I think that we have a situation here where I don't think there's direct evidence that he held a gun, but if it's construed as being evidence that he held a gun, I don't think it rises to the level of creating a genuine issue. And with that, unless there are more questions, I'll take my seat and return to the time that you graciously gave me earlier. All right. Thank you, counsel, on both sides for the briefing and oral argument in the case. The case will be submitted.